IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 19, 2016

**STATE OF TENNESSEE v. ERIN LEA GENTRY**

**Appeal from the Circuit Court for Lawrence County**
**No. 31866     Stella L. Hargrove, Judge**

———————————————————

**No. M2015-02183-CCA-R3-CD – Filed August 18, 2016**

———————————————————

Defendant, Erin Lea Gentry, pled guilty to aggravated statutory rape and reserved a certified question for appeal pursuant to Tennessee Rule of Criminal Procedure 37(b)(2)(A) in which she asked this Court to determine whether the initial search warrant which led to the discovery of evidence supporting the indictment was overly broad; whether the affidavit supported a finding of probable cause to search specific items; and whether the officers exceeded the scope of the warrant. After a review, we determine that the motion to suppress was properly denied, and thus we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

M. Wallace Coleman, Jr., Lawrenceburg, Tennessee, for the appellant, Erin Lea Gentry.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Brent Cooper, District Attorney General; and Christi L. Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

The underlying facts in this appeal are taken from the "Agreed Statement of the Evidence" submitted by the parties pursuant to Tennessee Rule of Appellate Procedure 24(c). On June 17, 2013, Investigator John Roberts of the Lawrence County Sheriff's

Department requested a search warrant for a residence located on Redstone Drive in Summertown. According to the affidavit accompanying the warrant, a confidential informant was on the premises within the 72 hours preceding the request for the warrant and "observed a quantity of methamphetamine being stored inside the residence."

The search warrant named Timothy Morrow and specified a residence on Redstone Drive to be searched for the following pertinent evidence:

-Any equipment, devices, records, computers and computer storage discs, used to facilitate the aforementioned criminal activity to include the seizure of computers to retrieve such records.

-Photographs, videotapes, audiotapes, or electronically stored images of persons involved in the criminal conduct, or of persons spending proceeds of criminal activity.

-Records of the aforementioned criminal activity whether stored on paper, on magnetic media such as tape, cassette, disk, diskette or on memory storage devices. This shall also include but not be limited to records stored on programmable instruments and electronic storage media such as telephones, voice mail, answering machines, electronic address books, calculators, or any device designed to store information.

-Any evidence or items that would be used to conceal the FOREGOING or prevent its discovery.

As a result of the initial search, police officers found and seized a variety of items including marijuana, methamphetamine, pills, drug paraphernalia, scales, and guns. Relative to this appeal, officers also recovered an "SD card," which is a small, electronic storage device "approximately the size of a postage stamp." Officers located the card between a mattress and box spring at the residence. The SD card contained two separate videos of "what appeared to be an underage . . . male having sexual intercourse with [Defendant]." A still shot picture was taken of the young male from the video and shown to the principal of Lewis County High School. The male was identified as a juvenile under the age of eighteen.

As a result of what was found on the SD card, officers applied for a second search warrant on June 26, 2013. The second search warrant sought evidence in the possession of Defendant and/or Timothy Morrow at the residence that would indicate involvement in especially aggravated sexual exploitation of a minor and stored on "laptop computers, desktop computers, cell phones . . . , cameras, video cameras, DVDs, homemade DVDs and any other electronic device capable of storing digital files." The search warrant

application was granted, and the second search warrant was executed. Officers seized a number of items capable of storing photographs.

As a result of items obtained from the two search warrants, Defendant was indicted in case number 31886 for aggravated statutory rape.[1] Counsel for Defendant filed a motion to suppress the evidence obtained as a result of the searches. The motion to suppress alleged that the first search warrant was "over-broad." In addition, the motion to suppress alleged that the "items allowed to be searched and/or seized by search warrant #1 were not supported by probable cause in the affidavit" and "the officers exceeded the scope of search warrant #1 by perusing the SD card and opening the video files found on it." As a result of the deficiencies with the first search warrant, Defendant insisted that the second search warrant was "fruit of the poisonous tree and . . . illegal."

The trial court determined that the search warrant was not overbroad and that the officers did not exceed the scope of the search warrant. As a result, the trial court denied the motion to suppress.

Subsequently, Defendant entered a guilty plea disposing of all charges in case numbers 32263, 31866, and 32163. Defendant pled guilty to one count of child neglect and one count of attempted possession of methamphetamine for resale in case number 32263 and one count of aggravated statutory rape in case number 31866 in exchange for an effective sentence of five years as a Range I, standard offender.[2] As part of the guilty plea, Defendant reserved the following certified question of law pursuant to Rule 37(b)(2)(A) of the Tennessee Rules of Criminal Procedure:

> [Whether t]he search warrant conducted pursuant to the initial search warrant (also known as "search warrant #1"), issued on or about June 17, 2013, was unconstitutional and invalid due to following three issues: (1) The affidavit filed with search warrant #1 is over-broad, and contains "boiler-plate" and "catch-all" type provisions, and essentially permitted an unconstitutional general search of the premises and persons located at . . . Redstone Drive, Summertown, Tennessee; (2) that the items allowed to be searched and/or seized by search warrant #1 were not supported by probable cause in the affidavit; and (3) the officers exceeded the scope of

---

[1] Defendant was indicted on several other charges in conjunction with the execution of the search warrants at issue herein. The indictments for these charges do not appear on the record on appeal, but the guilty plea petition indicates Defendant was charged with two counts of aggravated child neglect, one count of possession of methamphetamine for resale, four counts of simple possession, and one count of possession of drug paraphernalia in case number 32263, and one count of especially aggravated sexual exploitation of a minor in case number 32163.

[2] A nolle prosequi was entered by the State in case number 32163.

search warrant #1 by perusing an SD card and opening video files found on it.  If search warrant #1 is determined to be unconstitutional or if the officers are found to have exceeded the scope of search warrant #1, then the second search warrant (also known as "search warrant #2") issued on or about June 21, 2013, is based upon evidence obtained from search warrant #1 and is, therefore, the "fruit of the poisonous tree", and should be excluded.[3]

Defendant filed a timely notice of appeal.

*Analysis*

On appeal, Defendant first insists that the trial court improperly denied the motion to suppress because the search warrant was overly broad and the items allowed to be searched were not supported by probable cause.  Specifically, Defendant claims that the only specific information provided by the confidential informant was that a "quantity of methamphetamine was being stored inside the residence."  While conceding that this information justified a search "for the purpose of locating and seizing the methamphetamine," Defendant argues that the search allowed a seizure of nothing more than methamphetamine.  The State argues instead that the search warrant sought to find information with regard to the sale or possession of methamphetamine as well as money laundering and that the items described in the search warrant and ultimately seized were directly related to the discovery of such criminal activity.  Further, the State contends that once the SD card was seized, the evidence of the aggravated statutory rape was in plain view.

Rule 37(b)(2) of the Tennessee Rules of Criminal Procedure provides that an appeal lies from any judgment of conviction upon a plea of guilty or nolo contendere if:

(A) [T]he defendant entered into a plea agreement under Rule 11(c) but explicitly reserved—with the consent of the state and of the court—the right to appeal a certified question of law that is dispositive of the case, and the following requirements are met:

(i) the judgment of conviction or order reserving the certified question that is filed before the notice of appeal is filed contains a statement of the certified question of law that the defendant reserved for appellate review;

---

[3] We assume the reference to June 21, 2013 is a typographical error as the record indicates that search warrant #2 was issued on June 26, 2013.

(ii) the question of law as stated in the judgment or order reserving the certified question identifies clearly the scope and limits of the legal issue reserved;

(iii) the judgment or order reserving the certified question reflects that the certified question was expressly reserved with the consent of the state and the trial court; and

(iv) the judgment or order reserving the certified question reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case[.]

Tenn. R. Crim. P. 37(b)(2)(A).

A defendant seeking to suppress evidence obtained pursuant to a search warrant bears the burden of establishing by a preponderance of the evidence "the existence of a constitutional or statutory defect in the search warrant or the search conducted pursuant to the warrant." *State v. Henning*, 975 S.W.2d 290, 298 (Tenn. 1998). In reviewing a trial court's ruling on a motion to suppress, this Court will uphold the trial court's findings of fact unless the evidence preponderates otherwise. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). The party prevailing in the trial court is afforded "the strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998). Ordinarily, questions concerning the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. However, when witness credibility is not an issue, this Court is "as capable as [the] trial court[] of reviewing the evidence and drawing conclusions." *State v. Berios*, 235 S.W.3d 99, 104 (Tenn. 2007) (citing *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000)). "Where the issue before this Court is the application of law to undisputed facts, then [our] review is de novo." *State v. Randolph*, 74 S.W.3d 330, 334 (Tenn. 2002) (citing *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000)); *see also State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001) (holding that review of the trial court's application of the law to the facts is de novo, with no presumption of correctness).

Under both the Tennessee and United States Constitutions, no search warrant may be issued except upon probable cause, which "requires reasonable grounds for suspicion, supported by circumstances indicative of an illegal act." *State v. Smotherman*, 201 S.W.3d 657, 662 (Tenn. 2006). Tennessee requires a written and sworn affidavit, "containing allegations from which the magistrate can determine whether probable cause exists," as "an indispensable prerequisite to the issuance of a search warrant." *State v. Henning*, 975 S.W.2d 290, 294 (Tenn. 1998). The affidavit must contain more than mere

conclusory allegations on the part of the affiant. *Id.* Thus, the affidavit must "set forth facts from which a reasonable conclusion might be drawn that the evidence is in the place to be searched." *State v. Smith*, 868 S.W.2d 561, 572 (Tenn. 1993) (citations omitted). The standard to be employed in reviewing the issuance of a search warrant is "whether the issuing magistrate had 'a substantial basis for concluding that a search would uncover evidence of wrongdoing.'" *Smotherman*, 201 S.W.3d at 662 (quoting *State v. Ballard*, 836 S.W.2d 560, 562 (Tenn. 1992)). "The nexus between the place to be searched and the items to be seized may be established by the type of crime, the nature of the items, and the normal inferences where a criminal would hide the evidence." *Smith*, 868 S.W.2d at 572 (citation omitted); *see also State v. Saine*, 297 S.W.3d 199, 206 (Tenn. 2009) (recognizing that an affidavit in support of a search warrant "must show a nexus among the criminal activity, the place to be searched, and the items to be seized") (citing *State v. Reid*, 91 S.W.3d 247, 273 (Tenn. 2002); *Smith*, 868 S.W.2d at 572)). "In determining whether probable cause supports the issuance of a search warrant, reviewing courts may consider only the affidavit and may not consider other evidence provided to or known by the issuing magistrate or possessed by the affiant." *Id.* (citing *State v. Carter*, 160 S.W.3d 526, 533 (Tenn. 2005)). Once a magistrate finds probable cause, the finding is entitled to "great deference." *State v. Yeomans*, 10 S.W.3d 293, 296 (Tenn. Crim. App. 1999) (citing *State v. Melson*, 638 S.W.2d 342, 357 (Tenn. 1982)); *see State v. Jacumin*, 778 S.W.2d 430, 431-32 (Tenn. 1989).

The affidavit in support of the first search warrant was prepared by Investigator Jon Roberts, a seventeen-year veteran police officer. The affidavit was detailed, containing multiple paragraphs designed to inform the magistrate exactly why certain items were sought, including a statement about how:

> [i]ndividuals who deal in controlled substances often possess photographs and/or videotapes of themselves, their criminal associates, their drugs, their weapons, and their property that are proceeds of illegal activities. They may also possess photographs and/or videotapes of themselves and their associates . . . .

We conclude that the warrant herein was sufficiently specific. Defendant actually concedes in her brief that the information provided by the confidential informant that a "quantity of methamphetamine" was at the residence was "enough to justify a search of the residence for the purpose of locating and seizing the methamphetamine." We agree and acknowledge that the initial purpose of the first search warrant was to discover drug activity at the residence. The search warrant and accompanying affidavit contained a specific list of items sought related to the sale and delivery of drugs. Once officers began the search and seized evidence of drug sales and deliveries, such as digital scales, guns, baggies, and methamphetamine, there is no question that the search warrant encompassed

the seizure of an SD card found at the residence. Thus, the list of items sought to be seized was not overly-broad.

Moreover, we determine that the search warrant established a sufficient nexus between the items sought to be seized and Defendant's alleged violations of the Tennessee Drug Control Act of 1989 and Money Laundering Act Violations. *See* T.C.A. § 39-17-417 and 39-14-901. As explained in the affidavit accompanying the application for the search warrant, the SD card could have contained information in the form of pictures and/or videos of drugs and/or drug transactions. When officers found the SD card between a mattress and box spring, viewing the contents of the SD card was authorized by the terms of the existing search warrant. Officers did not, as Defendant suggests, exceed their authority by opening files on the SD card. There is no evidence in the record to support Defendant's assertion that officers searched the SD card while knowing that it would not contain evidence of drug transactions.

Defendant also suggests that the search warrant was somehow invalidated by the failure to include her name. We disagree. The affidavit accompanying the search warrant did not specify anyone by name but merely informed the magistrate that a quantity of methamphetamine was being kept at a residence at the address provided by the confidential informant. *Saine*, 297 S.W.3d at 206 (recognizing that an affidavit in support of a search warrant "must show a nexus among the criminal activity, the place to be searched, and the items to be seized") (citing *Reid*, 91 S.W.3d at 273; *Smith*, 868 S.W.2d at 572)). It is not clear from the limited record how officers identified Timothy Morrow and added his name to the warrant. It is the defendant's role to provide an adequate record for review. Tenn. R. App. P. 24(b). Defendant has failed to show that she did not have a possessory interest in the residence or was not an occupant of the residence. *See State v. Thomas*, 818 S.W.2d 350, 358-59 (Tenn. Crim. App. 1991) (drawing a distinction between occupants of a residence and transient visitors). The absence of a property owner's name from a search warrant does not render the search unlawful. *See Garner v. State*, 423 S.W.2d 480, 482 (Tenn. 1968) (quoting *Seals v. State*, 11 S.W.2d 879, 881 (Tenn. 1928)); *see also Zurcher v. Stanford Daily*, 436 U.S. 547, 555 (1978) ("Search warrants are not directed at persons; they authorize the search of 'place[s]' and the seizure of 'things,' and as a constitutional matter they need not even name the person from whom the things will be seized."). Moreover, as soon as the video was recovered from the SD card, officers procured a second search warrant specifically naming Defendant for the purpose of uncovering any additional evidence of aggravated statutory rape.

Defendant also challenges the second search warrant based purely on her argument that the first search warrant is invalid. She insists if the first search warrant was improper, then the second warrant is "the fruit of the poisonous tree" and therefore invalid. Because we have determined that the first search warrant was valid, the second

search warrant cannot be invalidated as "fruit of the poisonous tree." Defendant is not entitled to relief.

*Conclusion*

Based on the foregoing, we affirm the judgment of the trial court.

_____
TIMOTHY L. EASTER, JUDGE